May it please the Court, Roger Hanson, H-A-N-S-O-N, of Santa Ana, appearing before the Attendant, Nguyen. Just to get myself up to speed, I would like to go through the basic facts of this case and assert to the Court that at every level of this case involving this search warrant, there's been a deprivation of the Fourth Amendment protection of my clients. It starts out, of course, with the shipment of a package from the island of Guam. The plane lights in Hawaii, and at the airport, apparently, a dog has run over the mail, and the dog alerts the package, and the package is opened up and contains $11,700 U.S. currency, no drugs at all. The package is then sent on to Orange County. It eventually gets in the hand of the dog that alerted the drug dog, right? The drug dog alerted on the package, yes. The package is then sent to Orange County. It gets into the hands of the affiant Phillips, who goes to a judge in Orange County and says that, among other things, that if the dog alerts, that's proof that the packager or the person who sent it had personal contact with drugs. It's not proof. It's probable cause, right? Well, but on the basis of USA versus $30,060 U.S. currency, which I relied on throughout the case, the mere fact that a dog alerts on money does not show that the current possessor of that money or the sender of the money is the one responsible for it because of the widespread circulation of tainted currency. Yeah, but you're looking at it in context. Here's the package, the dog alerts, and what's the government supposed to do, ignore it? No, but the question is, what can you do with it? If there was any drugs with it, I wouldn't be standing here talking to you, Your Honor, but $30,060 U.S. currency was involving actually another drug alert, and it was alleged to be packaged in a certain way by drug dealers and that sort of thing. Here, this was not packaged in any certain way. Admittedly, it was in a cassette that was sent here, but I say to the Court, why would you write cash on the package if you want to send it? There's no indication that this money was connected with the crime of drug dealing simply by the dog alerting on it. And then the issue then moved on to the next. Well, if that's the case, then why did the magistrate issue the order? Well, because he was falsified within the meaning of Franks v. Delaware, falsified by the defiant. The defiant told him. Why? You're relying on a published Ninth Circuit decision. Is the judge aware of our case law? On which? On the $30,000? Yeah. Wouldn't the magistrate judge be aware of that law, too? I don't know, Your Honor. Well, I assume the judges of our circuit are supposed to be aware of our case law, and if the magistrate judge with knowledge, assumed knowledge of that, you were suggesting that the police officer should have been aware of the case. So I'm just – I understand your position, but if the police officer should be aware of it, why wouldn't the magistrate judge be aware of it as well? You're not saying a U.S. magistrate judge, Your Honor. This is a state judge that issued the search warrant. This is not a Federal warrant. All right. So you don't think the magistrate judges – I mean the magistrates are aware of our law, then? Well, as much as the officer. It's the state officer also, isn't it? Well, the point is the statement was made in the affidavit that if the dog alerts on it, that indicates that the sender or the packager of it had personal contact with the dog. Well, the problem is this. In fact, you can't treat the officer more or hold the officer more to knowledge than you hold the magistrate. But give the officer the – I mean, give the magistrate the benefit of the doubt and suppose he knows no more about the law than the officer. Then you treat them equally. Now, either it seems to me the officer and the magistrate should both know about it, in which case it's a false statement, but it's not material since the magistrate knows, or neither one knows about that, and therefore it's certainly not a deliberate false statement. Well, Your Honor, I took his deposition, and he admitted to me, knowing the fact that there was a lot of U.S. currency in circulation that was tainted. He admitted that to me in his deposition. Well, that's true, and that may be – I understand your argument. I'm just trying to sort this out because it's a sort of an intriguing issue. He says in his statement of probable cause that it indicates that somebody who handled the package had drugs on their hands. The sender of the package. The sender of the package. Okay. So, well, obviously, it's the sender of the package. The recipient wouldn't have had his hands on them. Well, no, no, it's not, Your Honor. I'm saying that this dog, his olfactory sense alerts us on a – Right, that the person who sent it had drugs. Now, all of that's disclosed to the magistrate, right? The magistrate, in the statement of probable cause, got everything you've told us, where it originated, it was a canine in Hawaii, and so on. As I understand it, you're saying because he said that the dog sniffed and he's trained on cocaine and a variety of other opiates, that that indicates that it was – the package was handled by someone with drugs, was misleading to the magistrate. Because if the magistrate knew that 75% of the currency in Los Angeles, for example, had – if tested, would wind up with that kind of residue. Yes. I have no indication that the magistrate would know of that scientific fact. The state magistrate would know of the scientific fact. Well, it's – I'm not sure it's a scientific fact, but it's an observation or empirical statement. It's a scientific fact, Your Honor. There's a lot of tests on it, a huge number of tests on it. Okay. In any event, my question is this, though. The statement of probable cause simply says it indicates that it was handled by somebody who had come in contact with drugs. Now, you're saying that that is scientifically false, that, in fact, to say that at all, that it's zero evidence, it can't be included at all. That's what you're saying. I think that that statement should have been included, that if you want to say anything about that, well, there's also scientific evidence that 75% of the currency in circulation is tainted. And so for – I think 30,600 even talks about a clergyman. And Perry should have thought a judge that they checked some money in his pocket and had some tainted money on it. And the point that I'm trying to make is that whatever that judge knew or didn't know, the defiant said certain things to him which, as a matter of law and scientific fact, is false. And that's because he said he had – he recalled at some point having been trained on that. That's correct. In the deposition, he admitted that. So we know that he at least was aware of it, even if the magistrate was unaware of the statement. Right. And I believe that irrespective of whether the magistrate knows yea or nay about that, he should not falsify the facts to the magistrate. That's what I'm saying is a Franks v. Delaware violation. You know, help me identify precisely what is the false statement. The false statement is that he said that the fact that the dog alerted Donnelly on the package. Right. That's true. True. Indicates that the sender of the package had personal contact with controlled substances. The sender and the packager of the package back in Guam had personal contact with controlled substances. And that's what I say is false. That is not necessarily true because the money could have been tainted by somebody else before the sender put his hands on it to send it away. Well, it doesn't – what he actually says is the dog alerting on the package therefore indicates that the currency was packaged or shipped to Nguyen to win, excuse me, by someone who had handled marijuana and so on. It indicates. It doesn't say it proves it, but it indicates it. I understand. Now, you're saying because it's scientifically established that there's trace amounts of this currency, that statement was false because it doesn't indicate anything at all, therefore, to include it at all. I thought your argument was that he should have qualified it. Well, he should have done that, too. If he's going to say anything at all about it, he should have qualified it. He should have said, although it is of limited significance because or but anybody – or it could have come from anybody who may have come in contact. But it is an indication, is it not? I mean, it's certainly a possibility. Well, you know – I'm having a hard time understanding your argument that somehow or other that statement has to be sort of converted into a misrepresentation that somehow or other because the dog alerted, there has to be drugs in the package. We all know that drugs alert – dogs alert to less than the actual presence. I just don't understand. They opened the package and there was no drugs in it. They opened the package. There was absolutely no drugs in it. You understand that, Your Honor? No drugs in it, just the money. And that goes to my next contention here. Well, I don't – but I don't understand how you say it could have been qualified and then say it's false. Either it doesn't indicate it and it's false because this money with drugs on it is floating around all the time. As you said, it could be a minister, a judge. It could be anybody. So it doesn't indicate anything. That's my contention. It doesn't indicate anything. Well, but then there's – how could he have qualified that? It indicates it, but maybe it doesn't indicate it. It either does or it doesn't indicate it. My position is it does not indicate it. That's my – I'm going to put it that way. I just didn't see how you could say it could be qualified. Well, I'm saying that if he wanted to go on and make a further statement to the magistrate that scientific tests show that 75 percent of all circulating money could be made. Well, that would then prove it doesn't indicate it. Well, he didn't do that, so I suppose we're not arguing that. In your cases, I understand it comes down really entirely to what you got from him at the deposition. If he were only in the same position as the magistrate, either familiar with the cases or the scientific studies or not, there would be nothing. But you're basing your case, as I understand it, that he says he knew that – well, that since he had received training that a huge amount of currency circulates among innocent, legitimate people may be tainted. He said he knows that. And he was aware of that at the time he wrote his affidavit. So your statement wouldn't necessarily be true. Could be true. I don't know. Well, that's basically your argument, I gather, that he did know that it didn't indicate it. That's correct. What do you make of the case that has come out subsequently, which is currency, what, $42,500, where Judge Trott, writing for the courts, calls into question? Well, that indicates the so-called super dog case, Your Honor. They now apparently have some dogs that are qualified to detect some chemical residue other than the cocaine itself. I'm familiar with that case and talked about a super dog. This dog was not a super dog case, so I don't think it's relevant. If I may move on to the issue of the anticipatory warrant. I contend there's no case in existence, at least I've never found one, and I've challenged my opponents to give us one in their brief, and they haven't done so, that allows an anticipatory warrant to be issued to go to a home to deliver something where there's not drug contraband or criminal activity connected with it. And $30,600 U.S. currency says that this is not inherent contraband, and yet that affidavit was issued and the warrant was done. Well, isn't it contraband to ship money, currency in without reporting it? Doesn't that make the money contraband? I don't know. That's a different issue, Your Honor. That was never brought up in this case. This is solely the question of drugs or the money's connection. But if there were actual drugs in the package, would you have an argument? I wouldn't be here talking to you. There's actual drugs in the package, Your Honor. It's just the fact that it was money with some drug residue on it, and you're saying that's not enough. That's not enough. That's correct. And, again, it's not only 30,000 060 from this circuit, but there's several other circuits that have held the same thing, which I cite in here. Also, I think that it's important to recognize that $11,700 is rather low on the magnitude scale of amounts of money that suggests it's connected with drugs or something of that nature. For example, 30,000 060 was three times as much. And they could have said, well, gee, $30,000 in U.S. currency is very conclusively tied into drugs. That's good enough for us. The case specifically held that it was not. And there's cases that I cite in my brief of huge magnitudes that do not support forfeiting. So this case is so small on the scale that it does not qualify for forfeiting because of the magnitude of the money. So also the question is on the anticipatory warrant, was it accepted? Was it accepted at the house? The addressee was a male named Kelvin. When a 50 year old babysitter that couldn't speak English answers the door and they see her lay it on a pile of dirty clothes, they then go in and hit the house and search it and find some more money. Another twelve thousand dollars. But who. OK. This is no longer the Franks issue. Now we're talking about not the officer who wrote the affidavit, but the ones who executed it. That's correct. And you think that that would assume you're right, that they shouldn't have left it with somebody who didn't speak English. That wouldn't give them cause to search it. Do you think you can get by qualified immunity on that question? Oh, I don't know. I'm just saying that I don't think that's acceptance. And the requirements are that the anticipatory warrant must be accepted at the house. Certainly if a male answered the door, that might say, well, we don't know how old the person was or anything. Here you have a female, some 50 year old female who takes it, does not open it, lays it on a stack of dirty clothes. And it just to me is not acceptance. But the thing suffers from problems before you get there, because I'm confident that you can't issue an anticipatory warrant under the circumstances if you're delivering some cash money. All right. But who's the defendant for that issuance of a warrant under those circumstances? It wouldn't be the ones who executed who were given an anticipatory warrant by the magistrate, and they rely on good faith. They don't know that you can't issue an anticipatory warrant under that circumstance. Well, Your Honor, you know, I try to be intellectually honest. Obviously, some of the ancillary people that went over to this house are probably low on the totem pole of people that I can loop into this. But I'm going back to the Garden of Eden, and that's the original affidavit, and that sort of thing that I have under attack here. I might say in passing here quickly that counsel has raised the so-called Rooker-Feldman doctrine. I've looked at that. I don't think that has applicable to a 42 U.S.C. 1983 case. Number one, the defendants in this case were not at all before the courts in this State court, so that doctrine doesn't apply whatsoever. And I don't think it does apply in a 42 U.S.C. 1983 case at all. And the last thing I'd like to mention is they've raised, and I suppose I'll talk to you about race judicata based on some State decision in Orange County. The fact of the matter was a magistrate refused to quash the search warrant. But then when it went up to the Superior Court, the district attorney's office gave up on the case, and they dismissed the case. And so if there's any race judicata concepts, why, it certainly flows to the appellants and not to the defendants in this case. And so you probably want to save. You've got less than three minutes. You probably want to save it for rebuttal. Thank you. May it please the Court. My name is Chandra Gary Spencer. I represent the city defendants in this action. Your Honors, there are a few key facts in legal issues that the appellants are failing to recognize in this case. There is a whole maze of legal issues that they just can't seem to be able to effectively navigate their way through to overcome the grant of the summary judgment in this case. Preliminarily, their opposition to the motion was entirely procedurally defective. They did not offer any competent evidence in the record to oppose the summary judgment motion. They didn't oppose it properly. The city defendants objected below. But the judge said there were procedural problems, but he was going to rule on the merits, sir. He did, Your Honor. But the city defendants did properly preserve their objections, made objections, and we renew those objections now. But even turning to the merits, with respect to whether or not there was probable cause to issue this warrant, there's a few factors that have not, that seem to be confusing to. Let's take the Franks issue. That's really the most serious one, as counsel has presented to us. Take the deposition testimony that the officer was aware that a huge amount of currency circulates among innocent people and that he knew that at the time. How do you think that affects his representation to the magistrate? Because the indication of drugs was on the money, that meant that the person who shipped it was involved with drugs. I don't think it affects it at all. And the reason being is because if you look carefully at the evidence and you look carefully at the defiance declaration in support of the search warrant, as well as the declaration in support of the motion for summary judgment, you'll see that the indication that he got from Officer Arcano in Hawaii was that the dog had hit on the package. Well, wait a minute, wait a minute. This summary judgment, and you're saying his post-deposition declaration cures the testimony that he gave on deposition. It seems there's a disputed issue there, isn't there, as to whether he decided to fill in the gap in his declaration? Your Honor, no, that he did not. He said it in his declaration in support of the probable, in support of the search warrant, the declaration of probable cause, that the dog had hit on the package. Yes. And that he – what he said in his declaration was that he relied on Officer Arcano's statement to him, reasonably relied on Officer Arcano's statement to him, that the dog had hit on the package. Well, nobody's contesting that, that the dog hit on the package. Right. That's not the problem. The problem is the next sentence. The dog alerting on the package therefore indicates that the currency was packaged or shipped to Wynn by someone who had handled marijuana, hashish, cocaine, methamphetamine, heroin, or other opiates. Now, that's the problem, that they say that is a material false statement. And why do you – why is it not a material false statement? It's not a false statement because the dog hit wasn't on the currency alone. The fact is, is the dog hitting on the package, and the information he received from Officer Arcano, that the dog hitting on the package indicates that this stuff was shipped in this manner. There's a distinction here between the hitting solely on the currency, such as in the case of 30,000.060 U.S. currency, and the dog hitting on the package. Furthermore, the fact that the dog hit on both the package and the currency is probative under this Court's precedent, under what, as a – Did the dog hit on the wrapping separately from hitting on the package? After it was unpacked, he hit on the wrapping, is that it? Is that what you're saying? Yes, Your Honor. If you look at the city's – let me just get to the correct place. The footnote 2 of the city's answering brief, and it refers to the Federal Penance Supplementalist Service of Record. The dog hit on the packaging material alone, and the videocassettes in a tray with currency, but did not alert on the bundled currency. The dog hit on the packaging material. It didn't hit on the currency alone, the bundled currency. It hit on the packaging material alone. Wait a minute. The dog did not hit on the currency at all? Is that what you're saying? It hit on the videocassettes in a tray with the currency, so it did hit on the currency, but the package that had just the bundled currency alone, there were several different items, the dog did not hit on. The dog hit on the packaging material, the videocassettes in the tray with the currency, and did not hit on the bundled currency. But the currency was then taken out of the videocassette at that point? Is that what you're saying? Yeah. The currency, what happened was that the currency was wrapped in aluminum foil and electrical tape and placed on inside of these videocassettes. Right. But in terms of this alert situation, the currency had been separated from the videocassette. The currency had not been separated from the videocassette. It had been separated from the packaging material. But you just said it alerted on the videocassette. But not the currency. I don't understand your point. My point is that he was told that the dog had alerted on the package. He was never told that the dog had alerted on the currency. What he said was. . . Yeah, but if the currency is inside the videocassette, which was separate from the package, right? Which was separate from the packaging material, correct. Then I don't see how you can argue a separate argument with respect to the currency. If the currency was never segregated so the dog could sniff there and find nothing but sniff the videocassette and alert, that would be one thing. But is that what happened here? What happened here was the packaging material was segregated. Right. And the videocassettes and the currency were put in the same container. But what happened here, more importantly, was that he was told by the officer who did this separation, who handled the dog in Hawaii, this dog hit on the package. He was never told by this officer in Hawaii the dog hit on the currency. He was told that the dog hit on the package, and that means whoever handled the package had had the next package. So you're not really arguing separately as to the currency. The currency was always inside the videocassette. The argument is he reasonably relied on what was told to him by the officer in Hawaii. And he reported those facts, those true facts, in his declaration in support of the search warrant. He was never told. But when a dog alerts on a package and you open the package and you find cocaine in it, would you then say that he's alerting on the wrapping, not on the cocaine? Well, in this case, the dog alerted on the packaging material. So we don't know how the cocaine residue or the meth, whatever the residue, came onto the package. Correct. It could have derived from the currency or it could have derived from somebody having it on his hands as he wrapped it up. Right. And what this officer was told by the officer in Hawaii was that the dog had alerted on the package. And he was told by this officer in Hawaii that that means whoever handled the package, whoever packaged the material, had previously touched narcotics. What he was reporting in his search warrant application was not a material misstatement of fact. It was statements of fact which were told to him by other officers in which he reasonably relied upon. And furthermore, under this court, and as the district court correctly pointed out in its order granting the summary judgment motion, even if we look at the dog alerting on the currency, and as Your Honors correctly pointed out, a positive dog alert is probative. It's not the sole, it cannot be the sole fact on which the search warrant could be based, but it is probative. And as the district court correctly pointed out, there was more than just a dog alert to the money here. We had somebody who surreptitiously wrapped cash inside of videocassettes, did not declare the cash. It was, by most people's standards, a large amount of cash. By my standards, it certainly is. Relating back to Judge Reinhart's question, is the shipment of cash in this manner in itself a violation? It's not a violation, but it adds to it. By that amount. Isn't there a $10,000 cutoff? Actually, Your Honor, I researched this issue in preparation for the summary judgment motion, and there's no obligation to declare this amount when it's coming from Guam. Because of its United States territory, there's no separate obligation. I think we know something about that. So, in fact, that is not illegal, but it is probative to the probable cause issue. It's unusual for a person to ship $11,170 in cash through the United States mail. Most people who ship that amount of money do it in the form of a check, a money order. That amount of cash, wrapped in electrical tape and aluminum foil, put inside videocassettes, misdeclared with customs. Well, they don't want somebody ripping off the cash. When they say, don't put cash in the mail, and I don't have a checking account or a credit card or whatever, and I wanted to ship it, I mean, one could think of an innocent explanation for it. They're going to disguise it because they don't want somebody in the Postal Service to lose the package. One can think of an innocent explanation for a lot of things that add to probable cause. But the fact is – I'm just saying it's not always – No, not always. But it adds to the probable cause. I realize that there are times – The next time I send my nephew, I'm going to send him a videotape, and I'm going to wrap it up. And, Your Honor, you may be in trouble there. But it adds to the probable cause. And what we have here is a totality of circumstances text, an officer who did not lie. He reported what was told to him. He reported what he believed. And the officer does not have an obligation to give every innocent explanation for what he's told. He gave the information that was before him. It's possible that the dog alert – It's possible that the currency was in itself tainted. It's possible that there's an innocent explanation for the $11,000 being sent through the mail and being wrapped in the manner it was and misdeclared. You add to that not only all of those factors, but now you add to that the fact that he shows up at the house, he sees a car outside in front of the house, and the plate goes back to somebody he had previously arrested for shipping narcotics material through the mail. And yet there were a few mistakes in the record, and there were a few mistakes that the district court made, and in fact that I even made in preparing the summary judgment motion. And we've conceded those mistakes. One is the affidavit did not indicate that that package was shipped from Guam. However, if you look at the police report surrounding that prior arrest, the package was in fact shipped from Guam. So the affidavit didn't include that, but it did include information that this person had been previously arrested for sending narcotics material through the mail, and the officer correctly reported that information. The mistake that I made was that it was shipped to Santa Ana. It wasn't shipped to Santa Ana. We will concede that point, but it doesn't make a difference because the officer didn't say in his declaration that it was shipped to Santa Ana. You put the totality of those circumstances together and you have probable cause, or at a minimum what you have is qualified immunity. The officer didn't lie. He didn't have an obligation. Well, I don't think there's a lot, but I must say your argument about the package, that it was not the money that he reported to the magistrate that caused the alert, but the package that caused the alert, and therefore the cases regarding the money are really irrelevant, is an interesting argument. It doesn't seem that, however, the defendant had that in mind when he was being deposed because when he was asked about the money and whether he knew about all of that and everything, he didn't ever suggest that what he meant was that it was the wrapping material rather than the money that caused him to make the statement. He wasn't specifically asked that question? No, I know he wasn't specifically asked. I said, reading that whole part of the deposition, you would never in a million years get the idea that it was the packaging he was relying on rather than the money. You may not get that idea, but what he was being asked about, he was given a case that was put in front of him, and he was asked about this case. He was given the case. No, no, the questions are all before the case. It was before he told him about the case that he answered all these questions, and he had a very easy answer to it all. It was just the packaging. But he never said that. He was discussing the whole subject of money and what it means, do you know, and I agree with you. He was probably following directions of counsel. Answer the question and don't volunteer. I would submit to Your Honor he was probably a very good defendant. Don't tell him what would have solved the whole problem. And maybe I did a really good job prepping him for that deposition. But he did say in his declaration, and he did say in his search warrant affidavit, it was the package. And there's no evidence to the contrary that he didn't mean that's not what he intended, that's not what he meant. The fact that he didn't volunteer that information at deposition is really of no moment because he was not asked that question at deposition. He was asked questions about currency and if he knew about that, and he answered the questions. And maybe it would have been simpler for plaintiff's counsel if he had volunteered the information, but he had no obligation to do so. Well, he was asked, all right, so your conclusion or your statement to the judge that the dogger alerting on the currency indicates that the currency was packaged or shipped by someone who had handled the marijuana wouldn't necessarily be true, would it?  Well, even if Your Honor accepts the fact that the dog alerted on the currency, we go back to, and not the package, we go back to the issue of a dog alert being probative, and we also go back to the issue which Your Honor's pointed out of this is case law of this circuit that if it's known to this brave police officer, it should be known to the dog alert being probative. The deputy district attorney who reviewed the search warrant application, the magistrate judge who approved the search warrant application. That's true normally, except the thing about the question really comes down to the deposition, that this is not just a normal police officer, normal district attorney, normal judge who could presume to know nothing about the law, but this is somebody who was specially trained in this and says he had this particular knowledge. He had some training. He admitted to some training. Well, he said that he knew this fact about a huge amount of currency circulates among innocent, legitimate people, and he was maybe trained, and he said he recalled that from his training. As I recall from the deposition, he said that he had received, someone had discussed that case or that training at one of his training sessions. He didn't seem to have a significant amount of knowledge about the case law or what was the nuances behind it. And the deputy district attorney reviewed the search warrant, the judge who signed the search warrant reviewed the search warrant, and the judge who denied the motion to suppress reviewed the search warrant. So in and of itself, what I think we, as the district court correctly concluded, we have totality of circumstances, or at a minimum, we have qualified immunity based on that totality of circumstances. Separately and apart. I don't have a qualified immunity for a false Frank statement. For reasonably relying on what was told to him. That's not a Frank's violation. I mean, we're talking now about Frank's, whether it's a reckless statement or not, the material statement. Does qualified immunity apply to that? Well, I don't think you have the level of a Frank's here, because what you have is an officer who was reasonably relying on what was being told to him by another officer. By another officer who handled the dog, who handled the package, who did all of that. What he stated is that this is what he was told by. Are you saying it wasn't false or he wasn't reckless? He wasn't false. He wasn't false, and he reasonably relied on what someone else told him. He may have been incorrect, but he wasn't false. So apart from that, we have a number of other issues which. One more thing on this. The other officer told him what that he relied on. The other officer told him that the dog had hit on the package, and the other officer told him that a dog alert hitting on the package means that the handler or the sender of the package had handled narcotics. Those two statements, as he states in his declaration in support of summary judgment, were told to him by the other officer. We have a number of other separate issues which we raise independently as an independent grounds for granting summary judgment, one of which has been touched upon by appellants here. That is the Rooker-Feldman doctrine. The Rooker-Feldman doctrine clearly applies in a case where this court may basically mount a collateral attack on the State court. Even if it's not the same defendant? Pardon? Even if it's not the same defendant? Well, the State court judgment, it doesn't make a difference. The State court judgment in this case was a civil forfeiture proceeding where the money was forfeited. Pardon? Who was the defendant in the civil forfeiture? Who was the defendant in the civil forfeiture? The money. But both of the named plaintiffs in this action received notice of that case. And both of the named plaintiffs, one of the named plaintiffs in this action, Mr. Tony Nguyen, actually through Mr. Hanson, attempted to get the civil forfeiture proceeding set aside on some of these arguments. The court did not consider the merits but dismissed it on procedural grounds because of a problem with failing to comply with the correct statute of limitations for opposing such a petition for forfeiture. But the Rooker-Feldman doctrine even applies when the State court's ruling is not on the merits but is on procedural grounds. And if this court allows the court, reverses the district's court's ruling and allows this case to go forward, in effect what this court is doing is overturning that State court judgment that the money should be forfeited, that there was probable cause to take the money, and that the money correctly should be forfeited to the governmental agencies. Because the only ---- You're over time already, so do you want to wind it up? Okay. This is the last statement. The only claim that plaintiffs are making in this action relate to the money. Thank you. Thank you. Just briefly, Your Honor. Your time's all out. Your counsel used all your time. Do you want one minute? Oh, I beg your pardon. I forgot about ---- I understand, Your Honor. You have a minute if you want. Nobody said you wanted to divide the time. I just wish to make my appearance. John Norton, Assistant U.S. Attorney for the Federal Defendants. I have nothing to add to the brief. Oh, good.  Excellent presentation. Thank you. Thank you. Okay. Just briefly, in my remaining time, Your Honor, I failed to mention in my opening argument the fact that in the grand and somber judgment, the district judge made at least two mistakes and repeated them. He talked about the car involved with being in the driveway in front of the home. The car was not in the driveway. It was in front of the house. I think that's significant because it's in the driveway. In that case, it's definitely probably more closely approximately attached to the house. Here it was out. And he also admitted that five or six months ago when he made this arrest, he couldn't say that the defendant that he arrested was the same one that was involved with the car. Was that the same last name? Yeah, same last name. Like being named Smith, right. A Scandinavian like me, I know some Vietnamese people named Nguyen. I say to them in joke, how do you tell each other apart? I said, you know, it's amazing to me. He says, well, how do you tell the Joneses apart? So I suppose that's a good retort on it. But I pointed out in my deposition attached pages from the Orange County phone book. There's literally 19 or 20 pages in the Orange County phone book for the last name Nguyen. And with the first names of these people, there's at least 70 or 80 people with that same name. And so consequently, I think he honestly told the judge in the affidavit that he couldn't say for sure that this was the same person. And yet the district judge transmogrified that into not only being the same person, but it came from the island of Guam. And there was nothing in this case, whatever that package came from the island of Guam, nothing whatsoever. And counsel talks about that here, but I think that's unprofessional to even bring that in front of this court because that was not part of this case. Never was. And so the district judge in granting this motion had several mistakes in it, which obviously, I contend, led to his granting this motion. And in summary, if you go back to the cases, anticipatory warrants, 30,060 U.S. currency in the various cases, it simply does not pass muster on any level. And I'd ask this Court to reverse this. Thank you, counsel. The case just argued will be submitted. The Court will stand in a court recess or adjourn, whichever it is. Thank you.
judges: Reinhardt, O' Scannlain, Fisher